Good morning ARs. My name is Steve Tenigio. I represent the petitioner. I'd like to reserve two minutes for rebuttal. I'd like to start out by saying that the main point of contention, I believe, would be the social group of this case, which I believe is a civilian witness in a serious crime in El Salvador who have assisted in law enforcement. He had, on AR-417, he had recognized two people from the MS-18 gang. He gave information to the police and was going to ID those two individuals. Two people later had beaten him up, stating that it was for helping the police and it would get worse if he did not stop helping the police. So how did you define the social group? You had two social groups, if I'm not mistaken. One, you're only concerned about one, is that correct? Correct. Well, I'm just assuming that this other one is the more important one. And how do you define it? How was it defined before the IJ? Before the immigration judge? Well, exactly how I stated. The civilian witness, who was a witness of a serious crime in El Salvador, who had assisted the law enforcement, the police down there. And in doing so, he was a victim of the violence from the same group of people. Also in AR-417, the MS-18 even said that they knew the police was calling him to help. And he tried to move, but they found him. He only told the police of his new address. Well, so let me ask you this. So the board has laid out a standard for analyzing social group in, I believe it's MEVG, if I'm not mistaken? Yes. So would you mind going through, just so I make sure I understand your argument, how their analytical framework matches up with this particular social group? So in other words, the first requirement was composed of members with a common immutable characteristic. The second was defined with particularity. And three, socially distinct within the society in question. So how does this particular social group match up with that criteria? And what is the evidence in the record that supports your argument? So the three prongs that you had mentioned, the immutability would be the past experience as a witness to the police car fire, being able to ID the MS-18 gang members, and making a report to the police with valuable information to convict those criminals. That would be the immutable characteristic of that experience. The social visibility would be the... The social and socially distinct, that's the third. Distinct, yes. Correct, Your Honor. Not visibility, because they don't have to be actually visible. Correct, Your Honor. And that was decided in an MEVG. This was achieved when he first made the police report and spoke with the police, and the second time when they came to his house. So he was actively participating in helping to convict those criminals, which there were other witnesses, potential witnesses, who never came up because they were afraid of the retaliatory actions of gang members, which is prevalent in that country. He was the only witness brave enough to step up. So I would say that that is socially distinct from other people in that country, where corruption is prevalent and no one wants to get involved in any situation where they can be harmed or their families can be harmed, which has happened in many cases. Counsel, you would agree he was not a member of a gang. Correct. And so, as I understand, your argument is that gang membership was imputed to him. Correct. That was the... And so, therefore, he wasn't a social group. Tell me the best case that would support that proposition. That he was imputed as a rival gang member, well, because he stated that he lived in an area... Tell me the best Ninth Circuit case that would support your position, that he was a member of a social group. Well, I apologize. I wouldn't be able to give you the best case scenario for that. As I stated, I think this one that I'm mentioning is the stronger argument for this case, which is why I'm focusing on it. By this one, you mean not the imputed membership in the gang. Correct, Your Honor. Your best case, really, that might help you is Enriquez-Rivas. Correct. Isn't that correct? The distinction, of course. But the BIA said that, well, Enriquez-Rivas is a little bit different because there the petitioner had actually testified in court. Correct, Your Honor. Correct. And here what they said is that he appeared at the police station and he was asked to come back. I guess they have maybe some... He didn't appear at the police station. The officers told him to come to the police station to, quote, unquote, testify, whatever goes on at the police station. Correct. And he was threatened and decided not to go to the police station. He was threatened and physically harmed, and then he decided not to be a witness after that. Right. He had given a police report at the beginning, the night of the incident. He also gave a follow-up report when they came to his house, and then there was a different incident where he made a police report just on the threats of the phone calls. But as I understand your argument, and the best case, the case that is throughout this is Enriquez-Rivas. Correct. And the BIA said, well, that's different because he actually, the female petitioner in that case actually went to court and testified. Correct. And in the en banc opinion, we recognize the laws that protect witnesses who testify like this. I think that was Guatemala. Yes. Anyway, we said that that was a social group. So is the distinction between the circumstances here where she, the petitioner just is asked to come to the police station and cooperates with the police, is that sufficiently similar to what happened in Enriquez-Rivas? I believe it is because he had done pretty much everything except for testifying in court. Now, he made a police report, which to some extent is a public record and people can get information. And also the gangs, the MSA team, they knew about his involvement at every step of the way with the police. So he was already identified. And he was also identified by the public when he participated and made the police report. That is socially distinct because most people would not want to get involved, like I said. And that would fall under the particularity. Don't we need to look at the level of cooperation, though? I mean, we have Enriquez-Rivas, which tells us if you go testify in court, that level of cooperation. Yeah, that level is clear. But what isn't clear is if you are a witness and you go through all of the steps, but then perhaps you're threatened and maybe your family member is killed and then you decide not to go, does that still put you into that social group? I say it does because there are many instances where that has happened in the past in this country. And it's also recorded. Did you want to save some time for rebuttal? Yes. We've got a minute and 30 seconds. Good morning, Your Honor's Counsel. My name is Margaret Cuney-Taylor. I represent the government in this matter. It seems from the interchange you've had with opposing counsel that you're most interested in the particular social group, civilians who assist law enforcement. And so I'm going to direct my initial argument to that particular social group and then, Your Honor, if you have other questions about the imputed gang membership, I'd be happy to turn to that also. The question of the level of cooperation is an apt one in this case and very different from Enrique Rivas because, really, in this case, Mr. Escobar-Pineda only had five interchanges with law enforcement. And these interchanges were not all positive. They were also negative. So turning to the negative ones first, Mr. Escobar-Pineda refused to testify in open court in contrast to, of course, the Enrique Rivas case. And then subsequently, ultimately, he aborted contact with law enforcement altogether. He refused to cooperate further with them at all. And then there were three affirmative interchanges with law enforcement. He spoke with police shortly after witnessing the burning of a police vehicle. He spoke with civilian clothed detectives that came to his home and reiterated what he had said a couple days before after seeing the burning vehicle. And then the third affirmative one, and the only one where he really took an initiative, is where he went to the police station himself to make a report. Counsel, in Enrique Rivas, it was public testimony. And in a footnote in that case, the court stated that it was not deciding whether or not conduct that was less public would fall. And in the example the court gave, as you know, was testifying behind a screen where it wasn't public or wasn't seen. And so as I understand the argument is that there can be something less than testifying publicly and that this falls within that ambit. Have there been any other cases construing, in this particular case, that footnote, since Enrique Rivas? Well, yes, I have several responses to what you've just asked me. But specifically, I sent the court a 28-J letter that pointed to an unpublished decision, Gallardo-Torres. And in that decision, there was some analysis that is close to this case, but not exactly the same. There were some government informants, and they were informing against a drug cartel. And this court said, in the analysis of this particular part of the case, that that was not a particular social group. And also in that paragraph, compared that case, Gallardo-Torres, to Enrique Rivas, and said it's different from Enrique Rivas, just as you said, Your Honor, that there was no testimony in open court. So that's the closest one I can think of in the Ninth Circuit that answers your question. But if you'll permit me to turn to Enrique Rivas itself briefly, not in the footnote, but in the text. Enrique Rivas says, when speaking about Ms. Enrique Rivas, that she was uniquely, that testifying in court gave her a unique vulnerability, and also talked about how the particular social group analysis in that case was, and I quote again, very specific to that situation. So Enrique Rivas was crafted for particular social group analysis that involved testifying in open court. Now, that's not to say that it excludes any other kind of particular social group, but Enrique Rivas, as I understand it, was meant for that situation. And then finally, to answer your question, I think the question also turns on if there is something less than testifying in open court, and a question about particular social group. Who really decides the nitty gritty of this? So the fact finder is the agency, or the attorney general, or the immigration judge, or the board, however you want to term it. And this court applies the substantial evidence test to see if some other answer is compelled. And in this case, you really can't say where there's been this sort of vacillating assistance. I'm somewhat familiar with Enrique Rivas. I can imagine you are. But in that particular case, the BIA found that Enrique Rivas was not a member of a particular social group, correct? And we reversed that. So is it your position that it's up to the BIA to determine what evidence is substantial evidence to determine a particular social group? Well, substantial evidence is the court's standard of review. But it's the board's and the immigration judge's job to analyze the facts and to decide whether those facts are sufficient to constitute the requisite particularity and social distinction. And the Board of Immigration Appeal on Enrique Rivas found that it didn't constitute a particular social group, but we found that it did. So is that a legal question, not a factual question? Well, I think that the standard of review was subsequently clarified in Garay Reyes. And so there is, as I understand it, kind of a double standard of review. So the ultimate question of particular social group cognizability is, as you say, Your Honor, a legal question, and the court has de novo review. But it's a very fact-specific analysis. So did the board engage in a fact-specific analysis here? That's my concern. They just basically, as I read their opinion, they basically just said this is different than Enrique Rivas. He didn't testify. Yes. Let me just step over here to get my reference. Because I looked at that question also. So the board in these numbers, I always have a hard time keeping these initials straight, but I think it's an MEVG. Yes. They say, look, this is very, each case has to be analyzed on its own, the claim social group. Case by case. Case by case. And we emphasized that in a recent case called Piri Brock. Oh, yes. Uh-huh. Piri Brock, where we came down just after MEVG. Right. And we said, okay, the board says they have to do everything, they have to look carefully at each case. And in that case, we sent it back because the board hadn't done that. And when I looked at the record here, that's what concerned me with the board's analysis here, that they didn't do the kind of analysis that they say is required and what we say is required. And instead they say, well, this is different than Enrique Rivas because there she testified and here he didn't even go down to the police station to do whatever testify means. Right. There's evidence in the record here that he was threatened, he left the country. He presented evidence from the country conditions reports, news articles about people who cooperate with the police. I see I'm running short on time. So I do have some responses to what you've just asked me. First of all, I have to say, you know, there's no question that Mr. Escobar-Pineda had some difficulties. He was deemed credible and he had some difficulties. The only question is whether asylum is the solution for his difficulties and the government's position is that it isn't. So the board decision, as you say, spends a lot of time on Enrique Rivas and not a lot of time on the facts. But what the board does do is make a lot of references to the immigration judge's analysis. And the immigration judge analyzed particularity and social distinction in two places. The immigration judge did it in his decision and also Mr. Escobar-Pineda was appearing before the immigration judge pro se and the immigration judge took some time at the end of the hearing to explain to Mr. Escobar-Pineda what he was about to do in the decision. So I'd like to point the court to the analysis at administrative record pages 106 and then it goes basically through 112. It's in that area. And the immigration judge absolutely talked about particularity and about social distinction. And then again at the end of the hearing when the immigration judge was explaining to Mr. Escobar-Pineda, you know, where he was going, where he intended to go with the decision, that begins on page 197 and goes through pages 199. And on those pages, the immigration judge did go into some detail on those two features. I can talk about it or, okay. All right, okay. And so in summary, the government asks that the court deny the petition for review. Thank you. We'll just make it two minutes. I would just like to reiterate that the petitioner was on his way to testify, the only thing that stopped him was physical violence and threats of death. Is that sufficient to kick him out of a social group and to deny him asylum? I don't think so, I think. Well, a social group is just the first step. You've got all the other steps in the analysis as well. Also, he had unique information, the idea of the perpetrators, the gang members. He also had the license plate information. I'd also like to address the fact that this is an old case. The country reports is from 2014, so it's stale. There's a new one in 2017. So, if anything, I think it should also be considered for remand for additional new information for consideration of Convention Against Torture to consider the highly probative evidence that may change the petitioner's stance. Mr. Sanagio, I'm having problems understanding what evidence there is that Mr. Escobar is socially recognized as a member of the gang, as a member of a group. In Enrique Rivas, it was very clear this person testified in open court, and it was a public hearing, and she was therefore recognized publicly as being a testifier against the gangs. Here, how does anybody know that Mr. Escobar helped the police? Because at that night, police was seen going to him, to the house that he was at, to give evidence for the case. The police visited his house? They visited his house. That was the second time. The first time of the night of the incident, he went to a friend's house where that was at, and that's where the police was also at, because the car was right in front of the house that was caught on fire, the stolen police car. So everybody saw him. It wasn't hidden information. Everybody saw the police going to his house? Yes.
judges: Paez, Bea, Black